UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANATRA ENTERPRISES, INC. | : | CIVIL ACTION NO. |
| Plaintiff | : | 302CV2190 (JCH) |
| V. | : | |
| MONUMENTAL LIFE INSURANCE COMPANY | : | |
| Defendant | : | October 15, 2003 |

## MONUMENTAL LIFE INSURANCE COMPANY'S SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

The Defendant, Monumental Life Insurance Company ("Monumental"), through its undersigned counsel, hereby answers the plaintiff's complaint and asserts the following affirmative defenses:

### ANSWER

**COUNT ONE: (Breach of Contract)**

1.      Monumental admits that the plaintiff, Anatra Enterprises, Inc. ("Anatra") is now a domestic corporation with its principal place of business in Branford, Connecticut. Monumental admits that the plaintiff, Anatra does business as Anatra Insurance Services. Monumental is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 1 of Count One of the Complaint and, therefore, denies same.

2.      Monumental admits that it is now a foreign corporation with a principal place of business in Baltimore, Maryland. Monumental is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of paragraph 2 of Count One of the Complaint and, therefore, denies same.

3.      Monumental admits that on January 9, 1997, it executed a certain document entitled "Marketing Agreement" that was effective as of January 1, 1997 (the "Marketing Agreement"). Monumental further admits that the plaintiff executed the same as "Anatra Insurance Services." Monumental denies the remaining allegations of paragraph 3 of Count One of the Complaint.

4.      Monumental admits that the Marketing Agreement states, in part, that Anatra Insurance Services "will perform certain marketing services for Monumental" and that these services related, in part, to Medicare Supplement insurance coverage, but denies that the aforementioned constitutes the only obligation of Anatra Insurance Services under the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental admits that from about January 1, 1997 until about August 15, 2001, the services provided for in the Marketing Agreement related to Individual Medicare Supplement insurance products but denies that any of the services provided after August 15, 2001 solely related to Individual Medicare Supplement insurance products. Monumental denies the remaining allegations of paragraph 4 of Count One of the Complaint.

5.      Monumental admits that the Marketing Agreement states, in part, that Anatra Insurance Services "will solicit members for enrollment or application for coverage in accordance with the eligibility guidelines established by Monumental" and "will distribute descriptive brochures and other promotional materials relating to the plan(s) of insurance being underwritten." Monumental denies that the aforementioned

constitute the only obligations of Anatra Insurance Services under the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental admits that from about January 1, 1997 until about August 15, 2001, the services provided for in the Marketing Agreement related to Individual Medicare Supplement insurance products but denies that any of the services provided after August 15, 2001 related to Individual Medicare Supplement insurance products. Monumental denies the remaining allegations of paragraph 5 of Count One of the Complaint.

6.      Monumental admits that the Marketing Agreement states, in part, that "[a]ll marketing expenses incurred in connection with the solicitation of business shall be allocated and apportioned as set forth in Exhibit A and subsequent Addenda hereto." Monumental further admits that the term "marketing expenses" is defined to include "Advertising Production Costs" and "Advertising Dissemination Costs," which terms are further defined in the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental admits that from about January 1, 1997 until about August 15, 2001, the services provided for in the Marketing Agreement related to Individual Medicare Supplement insurance products but denies that any of the services provided after August 15, 2001 related to Individual Medicare Supplement insurance products. Monumental denies the remaining allegations of paragraph 6 of Count One of the Complaint.

7.      Monumental admits that the Marketing Agreement states, in part, that "[i]n consideration of the services to be rendered by [Anatra Insurance Services], [Anatra Insurance Services] shall receive from Monumental the compensation set forth in Exhibit A and any subsequent Addenda attached hereto, so long as the insurance and this

Agreement remains in effect" and further provides, in part, that "[a]ll such service fees shall become payable monthly at the time the respective premiums are paid to Monumental," but Monumental denies that such terms are the only terms of the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental further admits that Exhibit A to the Marketing Agreement provides, in part, that Monumental shall pay to Anatra Insurance Services 7% of the issued premium for the Anatra Insurance Services account, Medicare Supplement coverage, policy number MZ0100691H0000A-0017A, effective January 1, 1997, but Monumental denies that such terms are the only terms in the Exhibit A to the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental denies the remaining allegations of paragraph 7 of Count One of the Complaint.

8.     Monumental admits that, commencing in or after January 1997, Anatra Insurance Services engaged in the solicitation and placement of advertisements regarding Monumental's Individual Medicare Supplement insurance coverage, but denies that, after August 15, 2001, said solicitation and placement of advertisements regarding Monumental's Individual Medicare Supplement insurance coverage were lawful or made in accordance with, or directed toward individuals that were qualified to receive benefits under, Monumental's master insurance policy (the "Policy"). Monumental denies the remaining allegations of paragraph 8 of Count One of the Complaint.

9.     Monumental admits that beginning sometime in or after January 1997 and ending on or about August 15, 2001, it received applications for Individual Medicare Supplement insurance coverage through Anatra Insurance Services and that it provided

coverage to some of said applicants. Monumental denies the remaining allegations of paragraph 9 of Count One of the Complaint.

10.    Monumental admits that Anatra Insurance Services earned some fees under the Marketing Agreement as a result of applications solicited by Anatra Insurance Services and as a result of insureds who were provided insurance coverage through Anatra Insurance Services. Monumental further admits that the Marketing Agreement states, in part, that "[i]n consideration of the services to be rendered by [Anatra Insurance Services], [Anatra Insurance Services] shall receive from Monumental the compensation set forth in Exhibit A and any subsequent Addenda attached hereto, so long as the insurance and this Agreement remains in effect" and further provides, in part, that "[a]ll such service fees shall become payable monthly at the time the respective premiums are paid to Monumental," but Monumental denies that such terms are the only terms of the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental further admits that the Exhibit A to the Marketing Agreement provides, in part, that Monumental shall pay to Anatra Insurance Services 7% of the issued premium for the Anatra Insurance Services account, Medicare Supplement coverage, policy number MZ0100691H0000A-0017A, effective January 1, 1997, but Monumental denies that such terms are the only terms in the Exhibit A to the Marketing Agreement, to which reference should be made for the specific language thereof. Monumental denies the remaining allegations of paragraph 10 of Count One of the Complaint.

11.    Monumental admits that in November 2001, it discontinued payments of fees to Anatra Insurance Services under the Marketing Agreement. Monumental denies

that some of the fees were and are due and owing, and further pleads that Monumental determined that some other commissions were due, but which inadvertently had not been paid, an error which Monumental is in the process of correcting.

12.    Monumental admits that since November 2001, it has not paid Anatra Insurance Services any fees under the Marketing Agreement. Monumental denies the remaining allegations of paragraph 12 of Count One of the Complaint except as set forth in response to paragraph 11 above.

13.    Monumental denies the allegations of paragraph 13 of Count One of the Complaint.

14.    Monumental denies that portion of paragraph 14 of Count One of the Complaint that alleges: "As a direct and proximate result of Monumental's breach of the parties' contract . . ." As to the remaining allegations of paragraph 14 of Count One of the Complaint, Monumental is without sufficient knowledge or information upon which to form a belief as to the truth thereof and, therefore, denies same.

**COUNT TWO:  (Breach of Contract)**

1-7.    Monumental hereby incorporates by reference its responses to paragraphs 1 through 7 of Count One of the Complaint as though more fully set forth herein.

8.    Monumental admits that in or around May 2001, Anatra Insurance Services contacted it to express its interest in utilizing Independent & Retail Business Associates, Inc. ("IRBA") as a source of prospective applicants and enrollees for Monumental's Group Medicare Supplement insurance coverage. Monumental denies the remaining allegations of paragraph 8 of Count Two of the Complaint.

9.      Monumental admits the allegations of paragraph 9 of Count Two of the Complaint.

10.     Monumental admits that Anatra Insurance Services supplied information to Monumental pursuant to requests made by Monumental, including but not limited to IRBA's by-laws and constitution, but denies that the information provided by Anatra Insurance Services was entirely accurate and complete.

11.     Monumental admits that in or around July 2001, it approved IRBA and Anatra Insurance Services' utilization of IRBA as a source of prospective applicants and enrollees for Monumental's Group Medicare Supplement insurance products based upon representations made to Monumental regarding the qualifications necessary for IRBA membership and the members' qualification for Group Medicare Supplement insurance. Monumental denies the remaining allegations of paragraph 11 of Count Two of the Complaint.

12.     Monumental admits that on August 30, 2001, it executed a document entitled "Amendment No. 2 to the Marketing Agreement" ("Amendment No. 2") and that Amendment No. 2 was effective as of August 30, 2001.  Monumental further admits that Amendment No. 2 modified certain provisions of the Marketing Agreement. Monumental further admits that Amendment No. 2 appears to bear the signature of a representative of Anatra Insurance Services.  Monumental denies the remaining allegations of paragraph 12 of Count Two of the complaint.

13.     Monumental admits that Amendment No. 2 contained the following language "The original Marketing Agreement entered into between the parties is hereby modified to include the following compensation and marketing expenses as referenced in

- 7 -

Section 2 for the account(s) listed:" and further admits that Amendment No. 2 listed "Independent and Retail Businessmen's Association" as an account. Monumental further admits that Amendment No. 2 contains an entry that lists compensation. Monumental further admits that Amendment No. 2 contains provisions relating to each party's responsibilities with respect to advertising production costs and advertising dissemination costs for Medicare Supplement insurance coverage. Monumental denies the remaining allegations of paragraph 13 of Count Two of the complaint.

14.    Monumental admits that beginning sometime in or around September 2001, it received, through Anatra Insurance Services, applications for Group Medicare Supplement insurance coverage from individuals purporting to be members of and claiming to have satisfied the membership requirements of IRBA. Monumental further admits that it provided coverage to some of said applicants. Monumental denies that all of those for whom it provided coverage were qualified to receive coverage under the Policy. Monumental denies the remaining allegations of paragraph 14 of Count Two of the Complaint.

15.    Monumental denies the allegations of paragraph 15 of Count Two of the Complaint.

16.    Monumental admits that it has not tendered to Anatra Insurance Services certain fees under the Amendment No. 2. Monumental denies the remaining allegations of paragraph 16 of Count Two of the Complaint.

17.    Monumental denies the allegations of paragraph 17 of Count Two of the Complaint.

18.    Monumental denies that portion of paragraph 18 of Count Two of the Complaint that alleges: "As a direct and proximate result of Monumental's breach of the parties' contract . . ." As to the remaining allegations of paragraph 19 of Count Two of the Complaint, Monumental is without sufficient knowledge or information upon which to form a belief as to the truth thereof and, therefore, denies same.

## COUNT THREE:  (Breach of the Implied Covenant of Good Faith and Fair Dealing)

1-7.    Monumental hereby incorporates by reference its responses to paragraphs 1 through 7 of Count One of the Complaint as though more fully set forth herein.

8-15.    Monumental hereby incorporates by reference its responses to paragraphs 8 through 15 of Count Two of the Complaint as though more fully set forth herein.

16.    Monumental admits that sometime after July 1, 2001, it contacted Anatra Insurance Services and requested that Anatra Insurance Services discontinue utilizing IRBA as a source of prospective applicants and enrollees for its Group Medicare Supplement insurance.  Monumental denies the remaining allegations of paragraph 16 of Count Three of the Complaint.

17.    Monumental admits that in or about November 2001, it contacted IRBA to express its concern that its Group Medicare Supplement insurance program was being used as a substitute for Individual Medicare Supplement insurance by some members of IRBA, who Monumental believed were not qualified to be members of IRBA and were, therefore, not qualified to purchase its Group Medicare Supplement insurance. Monumental admits that IRBA terminated Monumental's Group Medicare Supplement Insurance program as of November 28, 2001, except to the extent that said program remained in effect for the specific purpose of affording Group Medicare Supplement

insurance to a defined closed block of insureds specifically agreed upon by Monumental and IRBA. Monumental denies the remaining allegations of paragraph 17 of Count Three of the Complaint.

18. Monumental admits that it sent a letter to IRBA dated December 13, 2001, which letter contained certain terms of understanding and agreement between Monumental and IRBA ("Letter"). Monumental further admits that the Letter states, in part, that "IRBA acknowledges that IRBA will (and has) terminated the [Group Medicare Supplement Insurance program] as of November 28, 2001, except the Group insurance policy will remain in effect only for the specific purpose of affording the [Group Medicare Supplement Insurance program] to a defined closed block of insureds who are specifically identified in Exhibit A-1 and Exhibit A-2 attached hereto." Monumental denies that the aforementioned language constitutes the entire Letter, to which reference should be made for the specific provisions thereof. Monumental denies the remaining allegations of paragraph 18 of Count Three of the Complaint.

19. The allegations of paragraph 19 of Count Three of the Complaint state a legal conclusion and, therefore, no response is required.

20. Monumental denies the allegations of paragraph 20 of Count Three of the Complaint.

21. Monumental denies that portion of paragraph 21 of Count Three of the Complaint that alleges: "As a direct and proximate result of Monumental's breach of the implied covenant of good faith and fair dealing . . ." As to the remaining allegations of paragraph 21 of Count Three of the Complaint, Monumental is without sufficient

knowledge or information upon which to form a belief as to the truth thereof and, therefore, denies same.

**COUNT FOUR:  (Tortious Interference with Business Expectancies)**

1-7.    Monumental hereby incorporates by reference its responses to paragraphs 1 through 7 of Count One of the Complaint as though more fully set forth herein.

8-15.    Monumental hereby incorporates by reference its responses to paragraphs 8 through 15 of Count Two of the Complaint as though more fully set forth herein.

16.    Monumental admits that sometime after July 1, 2001, it contacted Anatra Insurance Services and requested that Anatra Insurance Services discontinue utilizing IRBA as a source of prospective applicants and enrollees for its Group Medicare Supplement insurance.  Monumental denies the remaining allegations of paragraph 16 of Count Four of the Complaint.

17.    Monumental admits that in or about November 2001, it contacted IRBA to express its concern that its Group Medicare Supplement insurance program was being used as a substitute for Individual Medicare Supplement insurance by some members of IRBA, who Monumental believed were not qualified to be members of IRBA and were, therefore, not qualified to purchase its Group Medicare Supplement insurance. Monumental admits that IRBA terminated Monumental's Group Medicare Supplement Insurance program as of November 28, 2001, except to the extent that said program remained in effect for the specific purpose of affording Group Medicare Supplement insurance to a defined closed block of insureds specifically agreed upon by Monumental and IRBA.  Monumental denies the remaining allegations of paragraph 17 of Count Four of the Complaint.

18.    Monumental admits that it sent a letter to IRBA dated December 13, 2001, which letter contained certain terms of understanding and agreement between

- 12 -

Monumental and IRBA ("Letter").  Monumental further admits that the Letter states, in part, that "IRBA acknowledges that IRBA will (and has) terminated the [Group Medicare Supplement Insurance program] as of November 28, 2001, except the Group insurance policy will remain in effect only for the specific purpose of affording the [Group Medicare Supplement Insurance program] to a defined closed block of insureds who are specifically identified in Exhibit A-1 and Exhibit A-2 attached hereto."  Monumental denies that the aforementioned language constitutes the entire Letter, to which reference should be made for the specific provisions thereof.  Monumental denies the remaining allegations of paragraph 18 of Count Four of the Complaint.

19.    Monumental denies the allegations of paragraph 19 of Count Four of the Complaint.

20.    Monumental denies that portion of paragraph 20 of Count Four of the complaint that alleges: "As a direct and proximate result of Monumental's intentional and tortious interference with Anatra's business and financial expectancies . . ."  As to the remaining allegations of paragraph 21 of Count Four of the Complaint, Monumental is without sufficient knowledge or information upon which to form a belief as to the truth thereof and, therefore, denies same.

**COUNT FIVE:  (CUTPA Violations)**

1-7.    Monumental hereby incorporates by reference its responses to paragraphs 1 through 7 of Count One of the Complaint as though more fully set forth herein.

8-15.    Monumental hereby incorporates by reference its responses to paragraphs 8 through 15 of Count Two of the Complaint as though more fully set forth herein.

- 13 -

16.     Monumental admits that sometime after July 1, 2001, it contacted Anatra Insurance Services and requested that Anatra Insurance Services discontinue utilizing IRBA as a source of prospective applicants and enrollees for its Group Medicare Supplement insurance.  Monumental denies the remaining allegations of paragraph 16 of Count Five of the Complaint.

17.     Monumental admits that in or about November 2001, it contacted IRBA to express its concern that its Group Medicare Supplement insurance program was being used as a substitute for Individual Medicare Supplement insurance by some members of IRBA, who Monumental believed were not qualified to be members of IRBA and were, therefore, not qualified to purchase its Group Medicare Supplement insurance. Monumental admits that IRBA terminated Monumental's Group Medicare Supplement Insurance program as of November 28, 2001, except to the extent that said program remained in effect for the specific purpose of affording Group Medicare Supplement insurance to a defined closed block of insured specifically agreed upon by Monumental and IRBA.  Monumental denies the remaining allegations of paragraph 17 of Count Five of the Complaint.

18.     Monumental admits that it sent a letter to IRBA dated December 13, 2001, which letter contained certain terms of understanding and agreement between Monumental and IRBA ("Letter").  Monumental further admits that the Letter states, in part, that "IRBA acknowledges that IRBA will (and has) terminated the [Group Medicare Supplement Insurance program] as of November 28, 2001, except the Group insurance policy will remain in effect only for the specific purpose of affording the [Group Medicare Supplement Insurance program] to a defined closed block of insureds who are

- 14 -

specifically identified in Exhibit A-1 and Exhibit A-2 attached hereto." Monumental denies that the aforementioned language constitutes the entire Letter, to which reference should be made for the specific provisions thereof. Monumental denies the remaining allegations of paragraph 18 of Count Five of the Complaint.

19.     Monumental denies the allegations of paragraph 19 of Count Five of the Complaint.

20.     Monumental denies that portion of paragraph 20 of Count Five of the Complaint that alleges: "As a direct and proximate result of Monumental's unfair or deceptive trade practices or acts as alleged herein . . ." As to the remaining allegations of paragraph 20 of Count Five of the Complaint, Monumental is without sufficient knowledge or information upon which to form a belief as to the truth thereof and, therefore, denies same.

21.     Monumental is without sufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in paragraph 21 of Count Five of the Complaint and, therefore, denies same.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.     Anatra's claims are barred, in whole or in part, by reason of Anatra's intentional and/or negligent misrepresentations and/or material omissions of fact.

2.     In or around May 2001, Anatra contacted Monumental to request that it be allowed to market Monumental's Group Medicare Supplement insurance product to legitimate IRBA members.

- 15 -

3.      In connection with the aforementioned request, Anatra directly and/or indirectly represented to Monumental that only individuals associated with small businesses could obtain membership in IRBA.  Anatra did not advise Monumental that any individual was able to join IRBA, regardless of whether the individual had any or no association with a small business.

4.      Monumental relied on Anatra's representations and, on or about August 30, 2001, executed Amendment No. 2 to the Marketing Agreement, which Amended the Marketing Agreement to allow Anatra to market Group Medicare Supplement insurance to members of IRBA.

5.      On or about July 1, 2001, Monumental issued Group Policy No. MZ 0200215H0000A-0017A (the "Policy") to provide Group Medicare Supplement insurance coverage to certain members of IRBA.

6.      At the time Monumental issued the Policy and for sometime prior thereto, Anatra knew or should have known that Monumental was issuing the Policy based upon its belief that IRBA membership was restricted only to those individuals who have past or present association with small business.

7.      Sometime before Monumental executed Amendment No. 2, Anatra came to believe that IRBA would allow individuals with no past or present association with small business to become members of IRBA.  Anatra believed at this time that by merely paying the fee to join IRBA, any individuals would appear to Monumental to become eligible to purchase Group Medicare Supplement insurance through Monumental without respect to whether these new IRBA members fit within the eligibility guidelines established by Monumental for Group Medicare Supplement insurance.

8.      Anatra did not advise Monumental of Anatra's beliefs about the nature of IRBA and its membership criteria at any time before Monumental executed Amendment No. 2. Nor did Anatra advise Monumental that Anatra intended to market both IRBA membership and Monumental's Group Medicare Supplement insurance to non-IRBA members.

9.      Based on these beliefs about the nature of IRBA and its membership criteria, Anatra began a campaign to recruit individuals to join IRBA without regard as to whether these individuals had any past or present association with small business.

10.     As a part of this campaign, Anatra solicited the participation of, State Senator Edith Prague, a well known advocate of concerns to senior citizens .

11.     Through a letter dated August 17, 2003, approximately two weeks prior to the time that Monumental executed Amendment No. 2., Anatra informed Senator Prague that "anyone" could obtain Group Medicare Supplement insurance by becoming a member of IRBA simply through the submission of an application and payment of IRBA's annual dues.

12.     Upon information and belief, a significant number of individuals whom Anatra solicited were not otherwise eligible to obtain Group Medicare Supplement insurance, applied for and were accepted as members of IRBA and subsequently obtained Group Medicare Supplement insurance through Monumental.

13.     Anatra had a duty to inform Monumental that IRBA would accept anyone as a member regardless of whether the individual had no present or past association with small business because Anatra knew or should have known that this information would

- 17 -

be material to Monumental's issuance of Group Medicare Supplement insurance to IRBA.

14.    Anatra also represented that it would only market Monumental's Group Medicare Supplement insurance coverage to individuals who were eligible to participate in this coverage. At the time that Anatra made these representations, Anatra knew or should have known that they were false in that Anatra had already began to market Monumental's Group Medicare Supplement insurance to individuals it knew or should have known were not members of IRBA. Moreover, Anatra also failed to advise Monumental that Anatra intended to market this group insurance to other individuals who were not members of IRBA.

15.    Anatra's representations and/or material omissions regarding the qualifications of members of IRBA and regarding its marketing of Monumental's Group Medicare Supplement insurance were false, and Anatra knew or should have known them to be false when they were made.

16.    Monumental justifiably relied upon the aforementioned misrepresentations and/or material omissions of fact in deciding to provide, and providing, Group Medicare Supplement insurance coverage to members of IRBA.

17.    At the time the aforementioned misrepresentations and/or material omissions of fact were made, Anatra knew or should have known Monumental would rely upon them in deciding to issue Group Medicare Supplement insurance coverage to IRBA members.

18.    As a result of the aforementioned misrepresentations and/or material omissions of fact, Monumental has incurred and will incur damages.

19.    The aforementioned conduct of Anatra constitutes fraud and/or negligent misrepresentation, which vitiates any contract found to exist between Anatra and Monumental and bars any and all claims asserted by Anatra against Monumental.

## SECOND AFFIRMATIVE DEFENSE

Anatra's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are barred, in whole or in part, because Monumental was relieved of any duty to perform under the agreements alleged by Anatra to exist as a result of Anatra's prior material breach thereof.

## THIRD AFFIRMATIVE DEFENSE

Anatra's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Anatra's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Anatra's claims seek punitive damages, they are barred under the Fourteenth Amendment of the United States Constitution.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Anatra's claims are based on Monumental's communications with the Connecticut Department of Insurance, they are barred under the Noerr-Pennington doctrine as applied in Connecticut.

## SEVENTH AFFIRMATIVE DEFENSE

Anatra's claims are barred by the doctrine of mutual mistake.

## EIGHTH AFFIRMATIVE DEFENSE

Anatra's claims are barred by the doctrine of frustration of purpose.

WHEREFORE, the defendant respectfully request that this Court deny Plaintiff's claims and, further, that it enter judgment in favor of defendant, together with costs and all further relief this Court deems just and proper.

## COUNTERCLAIM

### The Parties

1.      Counterclaim plaintiff Monumental Life Insurance Co. ("Monumental") is a Maryland corporation with a principle place of business in Maryland.

2.      Counterclaim defendant Anatra Enterprises, Inc. ("Anatra") is a Connecticut corporation with a principle place of business in Connecticut.

### Jurisdiction and Venue

3.      This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(a).

### General Allegations

5.      On or about January 9, 1997, Monumental entered into a Marketing Agreement with Anatra Insurance Services, effective as of January 1, 1997 (the "Marketing Agreement").  On information and belief, Anatra Insurance Services is the trade name for Anatra Enterprises, Inc.

6.      The Marketing Agreement provided, in part, that Anatra agreed to provide marketing services, under the terms and conditions set forth therein, for certain of Monumental's insurance products in exchange for commissions as set forth therein.

7.      In or about April 2001, Anatra proposed to Monumental the possibility of marketing Monumental's Medicare supplemental insurance products to members of an

organization called the Independent and Retail Business Associates, Inc. ("IRBA").

Anatra erroneously identified IRBA in correspondence to Monumental as the

"Independent and Retail Businessmen's Association."

8.    Upon information and belief, Anatra had a longstanding relationship with

IRBA that it did not disclose to Monumental.

9.    In the course of proposing that it market Monumental's Medicare

supplemental insurance products to IRBA, Anatra represented to Monumental that IRBA

membership was "typically composed of active and retired self-employed individuals."

10.    Monumental relied on Anatra's representations and, on or about August

30, 2001, executed Amendment No. 2 to the Marketing Agreement, which Amended the

Marketing Agreement to allow Anatra to market Group Medicare Supplement insurance

to members of IRBA.

11.    On or about July 1, 2001, Monumental issued Group Policy No. MZ

0200215H0000A-0017A (the "Policy") to provide Group Medicare Supplement

insurance coverage to certain members of IRBA.

12.    Prior to the August 30, 2001, when Monumental executed Amendment

No. 2, Anatra began marketing Monumental's products in connection with Amendment

No. 2. Rather than confining its marketing activities to actual existing IRBA members,

Anatra began a campaign to increase IRBA membership and marketed this insurance to

individuals who were not members of IRBA.

13.    Anatra solicited individuals who had nothing to do with independent or

small businesses and who were not self-employed to join IRBA.  Although these

individuals were not members of IRBA, Anatra sought to entice them to join IRBA by

offering the opportunity to take advantage of Monumental's group rate Medicare supplemental insurance products.

14.    As part of this solicitation, in or about August 17, 2001, Anatra wrote to State Senator Edith Prague, a widely known advocate of issues of concern to senior citizens, to enlist her support in its effort to recruit individuals to join IRBA. Anatra represented to Senator Prague that "anyone" could join IRBA and then automatically become eligible to purchase Monumental's group rate Medicare supplemental insurance products. Anatra' explanation of IRBA to Senator Prague, however, omitted any reference to IRBA's self-described nature as a small business association.

15.    Based on Anatra's encouragement, Senator Prague, through her newspaper column and radio program, solicited seniors to apply for membership in IRBA for the explicit purpose of gaining access to Monumental's group rate Medicare supplemental insurance products.

16.    On information and belief, beginning in or about August 2001, Anatra mailed information about how to join IRBA to numerous individuals who had expressed interest in IRBA in response to Senator Prague's endorsement of IRBA as a means for unaffiliated individuals to purchase Monumental's group rate Medicare supplemental insurance products.

17.    At the time Monumental issued the Policy and for sometime prior thereto, Anatra knew or should have known that Monumental was issuing the Policy based upon its belief that IRBA membership was restricted only to those individuals who have past or present association with small business.

18.     Commencing on or about July 1, 2001, and continuing until November 2001, Monumental provided Group Medicare Supplement insurance coverage to members of IRBA.

19.     In or about September 2001, numerous individuals who were not in any way affiliated with small businesses, but who had joined IRBA following the solicitations by Anatra directly and through Senator Prague, enrolled in Monumental's group rate Medicare supplemental insurance coverage.

## COUNT ONE (Breach of Contract)

1.     Counterclaim plaintiff realleges and incorporates by reference the allegations as forth in paragraphs 1-19 of the Counterclaim as though fully set forth herein as paragraphs of this Count.

2.     Under the Marketing Agreement, Anatra was permitted to solicit enrollment for Monumental's group care insurance products only in accordance with eligibility guidelines established by Monumental.

3.     Under the Marketing Agreement, Anatra was permitted to advertise and distribute promotional materials only with the prior written approval of Monumental.

4.     In breach of the explicit and implicit undertakings of the Marketing Agreement, Anatra solicited individuals regardless of whether they were connected to groups that Monumental had approved for marketing, in particular to individuals who were not members of IRBA at the time of solicitation.

5.     These contractual improper solicitations included both the enlistment of Senator Prague and use of her connections with the senior citizen community to encourage individuals to join IRBA for no reason other than to obtain access to

- 23 -

Monumental's group rate Medicare supplemental insurance products, as well as Anatra's own direct mailings to individuals who were not members of IRBA.

6.    As a result of Anatra's extracontractual solicitation of customers for Monumental's products, Anatra caused an unfavorable risk group of policy holders composed of a disproportional number of unqualified and/or poorer risk individuals to apply for and enroll in Monumental's group rate Medicare Insurance products.

7.    As a result of this breach of contract, Monumental has suffered losses in an amount to be determined at trial.

### COUNT TWO (Breach of the Implied Covenant of Good Faith and Fair Dealing)

1.    Counterclaim plaintiff realleges and incorporates by reference the allegations as forth in paragraphs 1-19 of the Counterclaim as though fully set forth herein as paragraphs of this Count.

2.    The Marketing Agreement contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing requires that parties to a contract do nothing that would injure the rights of the other parties to receive the benefits of the contract.

3.    As an experienced insurance agent, Anatra understood that the difference between individual and group insurance risks and the corresponding cost of individual and group rate insurance. Therefore, Anatra knew that Monumental had not bargained for Anatra to market group rate insurance products to individuals.

4.    In breach of the implied covenant of good faith and fair dealing, Anatra intentionally recruited and offered the IRBA group program to unqualified and/or poorer risk individuals in an effort to profit at Monumental's expense.

- 24 -

5.      As a result of this breach the covenant of good faith and fair dealing, Monumental has suffered losses in an amount to be determined at trial.

### COUNT THREE (Misrepresentation)

1.      Counterclaim plaintiff realleges and incorporates by reference the allegations as forth in paragraphs 1-19 of the Counterclaim as though fully set forth herein as paragraphs of this Count.

2.      Anatra came to believe before Monumental executed Amendment No. 2 that IRBA's membership was not confined to independent and small business. Anatra came to believe that anyone could join IRBA. At this time, Anatra also came believe that IRBA did not strictly adhere to its own written criteria for membership and membership in fact was open to anyone provided they paid a modest membership fee.

3.      Also before Monumental executed Amendment No. 2, Anatra intended to market Monumental's group Medicare supplemental insurance products to individuals who were not members of IRBA and to solicit such individuals to join IRBA

3.      Anatra's beliefs about IRBA and its intention to market to non-members of IRBA are illustrated in Anatra's August 17, 2001 letter of Senator Prague which states, in part, that:

>       The cost of membership is $35.00 per year per member. Members have access to all of IRBA's benefits including low cost Medicare supplemental insurance. . . . The good news is *anyone can join* but you **must** be a member to take advantage of any of the benefits offered . . . .

(emphasis in original, underscoring added)

4.      It would have been material to Monumental's decision to execute Amendment No. 2 if it had been told that anyone could join IRBA.

- 25 -

5.      It would have been material to Monumental's decision to execute Amendment No. 2 if it had been told that Anatra intended to market to individuals who were not IRBA members.

6.      Anatra negligently or intentionally omitted this material information about IRBA, which contradicted the IRBA documents and information that Anatra had previously supplied to Monumental, and its intention to market to individuals who were not IRBA members.

7.      Anatra had an ongoing duty to update Monumental about the nature of IRBA's membership criteria and its intention to market to individuals who were not IRBA members.

8.      By failing to inform Monumental of its beliefs as to the true nature of IRBA's membership criteria and its intention to market to individuals who were not IRBA members, Anatra negligently or intentionally conveyed a materially false impression of the nature of IRBA's risk group to Monumental.

9.      Monumental relied on Anatra's material misrepresentations as to the nature of IRBA's membership criteria and its intention to market to individuals who were not IRBA members and, as a result, agreed to allow Anatra to market its group Medicare supplemental insurance products to IRBA members, resulting in the enrollment of a group of unqualified and/or poorer risk individuals into those insurance programs.

10.      As a result of these material misrepresentations, Monumental has suffered losses in an amount to be determined at trial.

WHEREFORE, Monumental requests the following relief:

1.      Compensatory Damages; and

2.      Whatever additional relief the Court deems appropriate.

DEFENDANT,
MONUMENTAL LIFE
INSURANCE COMPANY

By _____
Daniel L. FitzMaurice (ct05331)
Stephen B. Hudak III (ct25200)
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100
Fax (860) 275-0343
Its Attorneys

## **CERTIFICATION**

This shall certify that a copy of the foregoing was served, via U.S. mail, postage prepaid, on this 15th day of October 2003, to the following:

Eric P. Smith
Lynch, Traub, Keefe & Errante, P.C.
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506

Stephen B. Hudak III